IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA MILLAM, ADMINISTRATOR OF THE ESTATE OF WAYNE WHALEN<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN FREIGHT, LLC, AHMED SANKUS, SAFARA EXPRESS, LIMITED LIABILITY COMPANY, and FEDEX CUSTOM CRITICAL, INC.,<br><br>Defendants. | Case No. 20-cv-00797-JPG |

**MEMORANDUM AND ORDER**

**I.     Introduction**

This matter comes before the Court on Defendant FedEx Custom Critical, Inc. ("FedEx" or "Defendant") motion for summary judgement against Plaintiff Jessica Millam, ("Plaintiff") Administrator of the Estate of Wayne Whalen ("Whalen") (Doc. 104). Plaintiff opposes the motion (Doc. 107). FedEx, citing exceptional circumstances, filed a reply (Doc. 110). FedEx seeks judgment as a matter of law on Count IV[1] of the operative complaint.

**II.     Background**

This case arises from a motor vehicle accident on July 21, 2020. Whalen was driving on Interstate 70 in Cumberland County, Illinois where he was involved in an accident with Ahmed Sankus ("Sankus"), who was driving a 2014 Freightliner Straight Truck owned by Northern Freight, LLC ("Northern Freight"). In a third amended complaint, Plaintiff filed a four-count

---

[1] After FedEx moved for summary judgment, the Court granted Plaintiff's motion for leave to file an amended complaint to add a count for negligent hiring. Therefore, the operative complaint is at Doc. 113.

complaint asserting a claim for negligence against FedEx. Plaintiff alleges that Sankus was driving the truck as an agent of FedEx during the instant accident. Additionally, Plaintiff further alleges that it was the duty of Sankus, acting as an agent of FedEx to exercise ordinary and reasonable care to operate the motor vehicle.

Additionally, Plaintiff alleges that Sankus, acting as an agent of FedEx, breached his duty by failing to reduce his speed to avoid a collision, drove while distracted, violated Federal Motor Carrier Safety Regulation ("FMCSR") 392.14 by failing to use extreme caution and failing to reduce speed in hazardous conditions, by failing to discontinue operation due to hazardous conditions. Additionally, Plaintiff alleges Sankus, as an agent of FedEx, failed to reduce speed when the weather warranted in violation of 625 ILCS 5/11-601 and drove while fatigued. Plaintiff alleges that Sankus's negligent acts was a direct and proximate cause of Plaintiff's injuries.

Based on the pleadings in this case, Northern Freight has admitted Sankus was driving a truck owned by Northern Freight and Sankus was an employee of Northern Freight. FedEx is a transportation provider for shipments. The agreements at issue are the Transportation Service Agreement ("TSA"), and Master Transportation Agreement ("MTA"). The TSA gave FedEx the right to act as carrier or broker at its discretion.

Regarding the subject July 2020 load, Team Industrial Services hired FedEx to transport from its facility in Ohio to its facility in Illinois. FedEx was listed as the carrier on the shipper's bill of lading regarding this load, but FedEx argues that it was listed as the carrier because the shipper initially booked the load with FedEx and FedEx ended up brokering the subject load to Safara. (Doc. 104 at 3). Then, Safara "double brokered" the subject load to Northern Freight. FedEx argues that "double brokering" the load was against the terms of the MTA between FedEx and Safara. Plaintiff argues that nothing in the MTA prohibited Safara from leasing with

independent contractors or owner operators to hail loads that had been brokered to it. (Doc. 107 at 3).

FedEx dispatches loads through a Rate Confirmation Sheet ("RCS"). Pursuant to the RCS Safara was the carrier for the load, and his driver "Ahmed" was to drive the load. The RCS apparently imposes several terms requiring a driver to communicate with FedEx. Plaintiff argues that Sankus was "picking up the load for FedEx," the load belonged to FedEx, Safara was the motor carrier for this load, and Northern Freight was an independent contractor. Therefore, Plaintiff argues, Sankus was an agent of FedEx.

### III. Analysis

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the Court construes evidence and draws all reasonable inferences in favor of Plaintiffs.

On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir.1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The Court here will interpret state law "to determine how the state's highest court would rule." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017). Here, Illinois law would apply. When there is no dispute over which state's law applies, the court will apply the substantive law of the state in which the federal court sits. *Med. Protective Co. of Fort Wayne v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018). Here, the parties agree that Illinois law applies, and their choice is consistent with Illinois's presumption in personal-injury cases to apply the law of the state in which the injury occurred. T*ownsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 316 Ill.Dec. 505, 879 N.E.2d 893, 903 (2007).

### a.  Duty under Agency Theory

First, FedEx argues that the evidence is undisputed that Sankus was operating his vehicle as Northern Freight employee and agent, and not as the agent of FedEx. Therefore, FedEx argues that FedEx had no duty to Plaintiff. (Doc. 104 at 5-6). Plaintiff argues the opposite and states there is substantial support that FedEx had control over Sankus.

"Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins*. Co., 376 F.3d 664, 672 (7th Cir. 2004). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc., v. Lubrication Techs*., 148 F.3d 742, 745 (7th Cir. 1998). The parties must consent to a principal-agent relationship, which may be created by conduct or contract. *Id*. Another significant factor "is the nature of work performed in relation to the general business of the employer." *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1057-58, 946 N.E.2d 463, 471 (2011). "Other factors to consider are: (1) the right to discharge; (2) the method of payment; (3) the provision of necessary tools, materials, and equipment; (4) whether

taxes are deducted from the payment; and (5) the level of skill required." *Id*. at 1058, 946 N.E.2d at 471.

FedEx argues that FedEx had no ownership interest in the vehicle driven by Sankus and Sankus was not acting as an agent of FedEx. FedEx's argument can be distilled as the following: FedEx did not hire Northern Freight or Sankus. FedEx brokered the load to Safara to hail as a carrier. Safara, as a broker, without permission, double brokered the load to Northern Freight, who assigned the load to Northern Freight's employee Sankus. Therefore, FedEx argues, FedEx had no authority or control over Sankus. Plaintiff argues that there is "substantial evidence" – depositions, contractual agreements, and application of trucking regulations and industry custom of those agreements – to support the allegation FedEx had control over Sankus. (Doc. 107 at 7).

    **i. Double Brokering**

Some explanation regarding a "double broker" relationship is required here. Double brokering involves the practice of a broker receiving a shipment from a shipper and subsequently tendering the shipment to another broker for movement by a motor carrier. It is frequently done without the shipper's knowledge or the motor carrier's knowledge. No written or even oral contracts exist between the shipper and the second broker or between the motor carrier ultimately used and the initial broker. *Jets Prolink Cargo, Inc. v. Brenny Transp., Inc.*, No. Civ. 02-1294 ADMRLE, 2003 WL 22047910, 1 n.1 (D. Minn. Aug. 29, 2003). "While there do not appear to be any reported administrative or court decisions that deal with this precise issue, double brokering is often considered illegal in light of the wording of federal regulations." James C. Hardman, Third Party Contract Issues Concerning Motor Carriers, Brokers, and Shippers, 34 Transp. L.J. 307, 310 (2007) (citing 49 C.F.R. § 371.7 (2007). This Court offers no opinion or finding as to the legality or illegality of double brokering.

Here, the Court finds that Safara giving the load to Northern Freight, who dispatched the load to Sankus constituted double brokering. Plaintiff argues that Safara did not "double broker" the load. (Doc. 107 at 12). Plaintiff argues FedEx knew Safara (or permitted Safara) and other motor carriers would contract with owner-operators to hail loads. (Doc. 107 at 12, 15). Plaintiff provides no support for this claim and the Court will not consider unsubstantiated claims. Plaintiff then cites 49 C.F.R. § 371.2(a) that states Safara was not a broker but rather a motor carrier. Specifically, Plaintiff argues § 371.2(a) states a motor carrier are not brokers "when they arrange or offer to arrange the transportation of shipments which they are authorized to transport." *Id*. It is clear based on the MTA that Safara was not permitted to broker the load to Northern Freight. Plaintiff does not provide support that Safara was authorized, through its relationship with FedEx, that it was authorized to transport the load through Northern Freight.

Next, Plaintiff argues that Safara "did not, and could not, broker any loads to anyone." Plaintiff's expert, in an affidavit, Walter Guntharp makes this claim. (Doc. 107, Ex. 7). FedEx responds and argues Plaintiff wrongfully contradicts sworn testimony with unsupported expert options (Doc. 110 at 3). The Court reviewed Plaintiff's expert report, which bases his conclusion that "no double brokerage occurred" and Safara was "unable to double broker" because per the FMCSR, Safara had no brokerage authority. The expert confirmed this by "the owner of Safara who acknowledged that Safara did not have any brokerage authority." (Doc. 107, Ex. 7 at 6). The expert does not provide a cite to Safara's answer. Pursuant to FRCP 59(e), this fact is not properly supported. The Court is unclear as to Plaintiff's expert foundation regarding his opinion. A judge must "look behind [the expert's] ultimate conclusion ... and analyze the adequacy of its foundation." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). Additionally, while Plaintiff continues to state Safara was not a broker and could not

have acted as a broker because of FMCSR, there is a difference between what they were authorized to do, and what they in fact did. Here, Safara double brokered the load, against the terms of the MTA.

Additionally, Plaintiff argues FedEx's argument regarding double brokering ignores the lease agreement[2] between Safara and Northern Freight, which identifies Safara as a motor carrier and not as a broker (Doc. 107 at 12-13). Caselaw requires to review the actions of the parties, and not just look at "contractual labels or provisions" to determine agency relationship. without exclusive weight being given to contractual labels or provisions. *Sperl,* 408 Ill.App.3d at 1057, 349 Ill.Dec. 269, 946 N.E.2d 463; *Pekin Ins. Co. v. Ledcor Constr., Inc.*, 2017 IL App (1st) 162623-U, ¶ 15 ("The alleged conduct, rather than the labeling of the claim in the complaint, is controlling."). The Court finds this load was double brokered.

    **ii.**     **Agency Theory**

Even if the load was not double brokered, pursuant to the rules set forth under Illinois law for a finding of an agency relationship, the relationship between FedEx and Sankus does not amount to a principal-agent relationship.

Plaintiff heavily relies on *Sperl* to support a finding that an agency relationship existed between FedEx and Sankus. In *Sperl*, the appellate court concluded that there was a reasonable basis supporting a finding of an agency relationship and thus declined to overrule a finding of vicarious liability against the defendant CHR, a logistics company that provided transportation-related services. CHR is a licensed freight broker and not a motor carrier. CHR and Dragonfly signed a carrier agreement so Dragonfly could haul loads for CHR. In *Sperl*, the driver, an

---

[2] The lease agreement lays out the "carrier responsibilities" which indicates the following requirements: (1) carrier requires contractor to conduct himself diligently; (2) carrier shall prepare paychecks and pay contractor for services rendered; (3) carrier shall pay contractor when all necessary documents including logbooks, miles and fuel documents, maintenance records, DOT inspection reports, and traffic tickets.

employee of Dragonfly, contacted CHR directly, and had to pick up the load at a specified time and make check-in calls with CHR. But there was much more: the driver had to "stay in constant communication" with the CHR's dispatchers; she was required to follow special instructions concerning the load she was hauling; she "was required to continuously measure the temperature of the load during her trip" and had to call CHR immediately if it did not meet a certain temperature; and the defendant "enforced its special instructions with a system of fines." *Sperl*, 408 Ill. App. 3d at 1058, 946 N.E.2d at 471-72. CHR's requirements effectively required the driver to violate federal regulations regarding the hours a truck driver can drive in a day in order to deliver her load on time, as she would be fined for late delivery. *Id*. at 1058, 946 N.E.2d at 472. These requirements and the fine-based enforcement, the court concluded, "directed [the driver's] conduct during the entire transportation process," thus supporting the finding CHR had the right to control the manner in which the driver performed her job. *Id*.

Plaintiff argues that pursuant to *Sperl*, the requirements[3] and special instructions in the RCS indicate FedEx had a right to control Sankus' performance. Specifically, Plaintiff argues the RCS imposed several terms of the driver including a requirement to communicate with FedEx at certain events, dictated the type of trailer to be used, and required drivers to provide FedEx with their cell number to monitor the load at all times. The crux of FedEx's argument is that Safara double brokered the load to Northern Freight, and therefore it had no authority to exercise control over Sankus. The Court agrees. While Plaintiff argues "it is undisputed that he [Sankus] was required to comply with its terms[,]" (Doc. 107 at 9), this claim is without evidentiary support. Here, because Sankus was not authorized to transport the load, FedEx could not have power or

---

[3] Plaintiff argues the RCS required Sankus to communicate with FedEx with the following: 1) arrival at the shipper, 2) when loaded but prior to departing, 3) every 4 hours while on the road, 4) upon arrival and departure from any customs/broker or transfer stops, 5) upon arrival at delivery, 6) when departing the delivery with proof of delivery details, and 7) at any time during shipment when the driver experiences a delay.

control over him to impose terms in the RCS. Additionally, while the rule requires the Court to evaluate the "right to control" the agent, the record indicates FedEx never communicated with Sankus, nor Sankus with FedEx. Whereas in *Sperl*, where the driver contacted CHR directly, was required to continuously measure the temperature of the load, and failure to do so resulted in fines, the Court does not find an analogous situation here. The Court cannot find an agency relationship exists where FedEx did not have any involvement with the load, nor knew the driver was not the driver on the RCS. Therefore, FedEx had no control or authority to control Sankus at the time of the accident. *Kolchinsky v. W. Dairy Transp*., LLC, 949 F.3d 1010, 1015 (7th Cir. 2020) (finding no agency relationship where "evidence shows that Western Dairy had no part in the transaction leading to Mr. Bentley's fateful trip.").

Even if the Court grants Plaintiff's argument that this load was leased and not double brokered, the facts of this case, and conduct do not rise to the level of an agency relationship as a matter of law. There was distance between FedEx and Sankus. FedEx brokered the load to Safara, who then gave the load to Northern Freight, the employer of Sankus. FedEx alleges it had no knowledge of Northern Freight taking over the hauling of the load. A finding that FedEx retained control over a driver from an entirely different company, with which it had no written agreement, does not support agency finding under Illinois law. The Court finds these facts similar to a case recently decided by the Seventh Circuit Court of Appeals where the court affirmed a finding that no agency relationship existed.

In *Kolchinsky v. Western Dairy Transport, LLC*, WD Logistics, LLC ("WD Logistics") instructed Mr. Bentley, sole member of Bentley Trucking, LLC, ("Bentley") to transport milk. 949 F.3d 1010, 1011 (7th Cir. 2020). Bentley provided freight transportation services to WD Logistics according to the terms of Carrier/Broker Agreement, where Bentley retained "full control" over

its personnel and either party could terminate agreement on 30-day notice. *Id*. at 1012. Western Dairy "owns and leases trucks and trailers and hauls freight, while WD Logistics brokers the hauls." *Id*. Bentley was the carrier for the load brokered by WD Logistics. *Id*. Bentley agreed to inform WD Logistics if Bentley could not meet the schedule, the broker reserved the right to withhold damages from Bentley's pay, and the agreement required Bentley pay for its employees, provide and maintain its own tractor, fuel, insurance, licenses, and permits. *Id*. The trial court found no agency relationship between Bentley and WD Logistics. On appeal, Plaintiff argued that the requirement to contact at various times, daily status call, call upon delivery, and the fact WD Logistics could charge Bentley for damages if a delivery was late or damaged supported agency finding. The Seventh Circuit held these facts did not amount to the "degree of control that Illinois courts have required when finding an agency relationship exists." *Id*. at 1014 (citing *Sperl*, 349 Ill.Dec. 269, 946 N.E. 2d at 471–72). Assuming *arguendo*, the load was not double brokered, the case at hand is not close to the facts Illinois courts have required when finding agency relationship exists. FedEx did not have contacts or communications with Northern or Safara, nor did it know the driver was a Northern Freight driver. Unlike *Kolinchinsky*, there was no agreement between FedEx and Northern Freight. There is no support that FedEx was able to control or retained the right to control the manner of delivery, especially where FedEx was not able to exercise that control over the driver. Without evidence FedEx was able to control any details of the delivery, there can be no agency relationship. "Even if a broker requires an exclusive relationship, has the power to fire, and sets rules governing the manner of loading the trucks, no agency relationship exists if the broker does not have the power to control the details of the manner of delivery." *Id.* at 1014; *Dowe v. Birmingham Steel Corp.*, 357 Ill.Dec. 391, 963 N.E.2d 344, 351 (2011) (finding no

agency relationship where a trucking company chose the route, set hours, and provided and maintained equipment and insurance).

The Court finds as a matter of law that Sankus was not an agent of FedEx. None of the facts alleged by Plaintiff show the degree of control that Illinois courts have required when finding an agency relationship exists. *See also Powell v. Dean Foods Co.*, 379 Ill.Dec. 837, 7 N.E.3d 675, 698 (2013) (upholding a finding of agency relationship where the trial evidence showed that the shipping company controlled the drivers' actions, required drivers to wear uniforms, and provided trailers; and the evidence also showed that the driver pulled exclusively for the company for 60 years and used its letterhead); *cf Trzaska v. Bigane*, 325 Ill.App. 528, 60 N.E.2d 264, 265–67 (1945) (finding no agency relationship where the driver is free to refuse a load).

Plaintiff states in its response that "FedEx clams that looking at the DOT number on the side of the truck determines whose authority the driver was operating under, although it provides no authority for this assertion." (Doc. 107 at 13). The Court believes that Plaintiff is responding to a citation in FedEx's motion which states that FedEx argues "it had no ownership interest in the subject truck." (Doc. 104 at 3). The Court need not consider this argument because it has already found that Sankus was not an agent of FedEx based on the agency test laid out by Illinois courts. *See also Petersen v. U.S. Reduction Co.*, 267 Ill.App.3d 775, 204 Ill.Dec. 415, 641 N.E.2d 845, 851 (1994) (finding no agency relationship despite providing a trailer).

Next the Court looks at the nature of work performed in relation to the general business of the employer. Here, the Court agrees that work performed is similar and directly related. However, without the "right to control the manner and method in which work is carried out," which is the ultimate test regarding whether to find an agency relationship, the Court cannot sustain an agency relationship on the fact the work performed between FedEx and Sankus is similar or directly

related. Other factors that the Court can consider are 1) the right to discharge; (2) the method of payment; (3) the provision of necessary tools, materials, and equipment; (4) whether taxes are deducted from the payment; and (5) the level of skill required. Here, there is no evidence that FedEx had any right to discharge Sankus since Sankus was subject to the lease agreement between Safara and Northern Freight. Regarding the method of payment, per the lease agreement Safara was the one to transmit payment to Sankus (or Northern Freight directly). The Court is unclear as to the other factors and neither FedEx nor Plaintiff detail any application of these factors to FedEx and Sankus. It is clear to this Court in applying the agency test, Sankus was not an agent of FedEx.

Simply put, there are not enough facts to show Sankus was an agent of FedEx. Illinois courts require much more than the facts at hand. Without more, the Court finds, as a matter of law, Sankus was not an agent of FedEx.

### b. Proximate Cause

Because the Court has found that FedEx owed no duty to Plaintiff, the Court need not address whether or not FedEx's negligence was a proximate cause of the accident.

### IV. Conclusion

For these reasons the Court **GRANTS** FedEx Custom Critical's Motion for Summary Judgment (Doc. 104). Count IV against FedEx Custom Critical is **DISMISSED**.

**IT IS SO ORDERED.**
**Dated: January 26, 2023**

                                                                    **/s/ J. Phil Gilbert**
                                                                    **J. PHIL GILBERT**
                                                                    **DISTRICT JUDGE**

.